IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE <br>     THE SALEM BAPTIST CHURCH OF JENKINTOWN, <br><br>         DEBTOR. | : CHAPTER 11 <br> : <br> : <br> : BANKRUPTCY NO. 10-30809-MDC <br> : |
| THE SALEM BAPTIST CHURCH OF JENKINTOWN <br><br>         PLAINTIFF, <br><br> V. <br><br> FEDERAL INSURANCE CO., CHUBB GROUP INSURANCE COMPANIES, EASTBURN & GRAY, P.C., MARC D. JONAS, JANE E. LEOPOLD-LEVENTHAL, WALTER J. LOGAN, JR., DELTA ALLIANCE GROUP, LLC, LESTER MACK, MARY ANDERS, THE HONORABLE RISA VETRI FERMAN, <br><br>         DEFENDANTS. | : <br> : <br> : <br> : <br> : ADVERSARY NO. 11-00050-MDC <br> : <br> : <br> : <br> : <br> : |

## MEMORANDUM OPINION

BY: MAGDELINE D. COLEMAN, UNITED STATES BANKRUPTCY JUDGE

    Before the Court for consideration are three motions to dismiss Salem Baptist Church of Jenkintown's ("Debtor" or "Salem Baptist Church") Complaint for Declaratory Judgment ("Complaint"). In its Complaint, Salem Baptist Church request that the Court declare *inter alia* that (1) its claims against Defendants, Eastburn and Gray, P.C., Jane Leopold-Leventhal, Esq., and Marc D. Jonas, Esq. (collectively, the "Eastburn Defendants") are covered by a certain professional insurance liability policy, (2) Defendants, Walter J. Logan, Jr., Delta Alliance Group, LLC, and Lester Mack's claims against the Eastburn Defendants are not covered claims under the insurance policy; (3) the Eastburn Defendants and their insurer are barred from expending any of the policy funds in defense and indemnification of the Eastburn Defendants; and (4) the policy proceeds are property of Salem Baptist Church's bankruptcy estate.

The motions filed by Defendants, Walter J. Logan, Jr. and Delta Alliance Group, LLC (the "Logan Motion"); the Eastburn Defendants (the "Eastburn Motion"); and Lester Mack (the "Mack Motion," collectively with the Logan Motion and the Eastburn Motion, the "Motions") seek dismissal of the Complaint pursuant to Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.[1] The Defendants assert that this Court lacks jurisdiction over the proceeding because Salem Baptist Church has no standing to raise the issues set forth in the Complaint. In the alternative, the Defendants assert that Salem Baptist Church has failed to state a claim for relief.

For the reasons discussed below and in consideration of the arguments made by the parties at a hearing before this Court on April 26, 2011 (the "Hearing"), as well as in their post-hearing briefs, this Court will grant the Motions, as it lacks jurisdiction over this matter. The Debtor's Complaint will be dismissed.

**Factual and Procedural Background**

On December 14, 2010 (the "Petition Date"), the Debtor filed a voluntary Chapter 11 petition. Listed on its bankruptcy schedules, the Debtor has alleged several claims against the Eastburn Defendants. The claims arise from the Eastburn Defendants' representation of the Debtor in connection with a dispute between the Debtor and its primary contractor, The Delta Organization, Inc. ("Delta"), relating to the construction of two buildings on behalf of the Debtor in Jenkintown, Pennsylvania (the "Construction Project"). As identified by the Debtor on its Schedule B, its claims against the Eastburn Defendants consist of the following: (1) a claim against the Eastburn Defendants for professional liability regarding the termination of the Debtor's construction contract with Delta; (2) a claim against the Eastburn Defendants for professional liability regarding criminal charges brought against Walter J. Logan, Jr. ("Logan") and Lester Mack ("Mack"); and (3) a claim for indemnification and contribution from the Eastburn Defendants in the matter of *Walter Logan v. Salem Baptist Church et al.*, EDPA 10-CV-01044 and *Lester Mack v. Salem Baptist Church et al.*, EDPA 10-CV-05536 (collectively, the "Malpractice Claims"). The Debtor alleges that the Malpractice Claims exceed $2.8 million and are

---

[1] These rules are made applicable to this proceeding pursuant to Rule 7012 of the F.R.B.P.

necessary to its successful reorganization.

The dispute between the Debtor and Delta with regard to the Construction Project was adjudicated pursuant to an arbitration proceeding that culminated with the issuance of an Award of Arbitrator dated May 19, 2009 (the "Arbitration Award"), in favor of Delta in the amount of $152,530.00. The Arbitration Award contains significant findings of fact with regard to the circumstances of the Construction Project and was confirmed by a subsequent state court judgment. *Corn v. Marks (In re Marks)*, 192 B.R. 379 (E.D. Pa. 1996) (holding claim preclusion applies to arbitration awards confirmed by state court judgments); *Gould Elec. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000) (explaining that a court considering a facial attack on its jurisdiction may consider the complaint and its attachments); *In re New Century TRS Holdings, Inc.*, 423 B.R. 467, 471 (Bankr. D. Del. 2010) (explaining that a court considering a factual attack on its jurisdiction may also consider documents supplied by the moving parties). However, the Arbitration Award contains no findings that are determinative of either the Debtor's present claims against the Eastburn Defendants or the scope of coverage provided by the Chubb Pro Lawyers Professional Liability, Policy No. 6804-4148, dated April 22, 2009 (the "Policy") issued by Federal Insurance Company ("Federal") to the Eastburn Defendants.

Two of the defendants to this proceeding, Logan and Mack, were also involved in the Contruction Project. Logan is Delta's principal and is the plaintiff in a lawsuit *Walter J. Logan, Jr., et al. v. Salem Baptist Church of Jenkintown, et al.*, now pending in the United States District Court for the Eastern District of Pennsylvania, Civ. No. 10-00144 (the "Logan Litigation"). Mack was employed as a project manager for Delta who performed work on the Construction Project and is the plaintiff in a lawsuit *Lester Mack v. Salem Baptist Church of Jenkintown, et al.*, now pending in the United States District Court for the Eastern District of Pennsylvania, Civ. No. 10-05536 (the "Mack Litigation," collectively with the Logan Litigation, the "District Court Litigation"). The Debtor is named as a co-defendant in both actions and, as a result of the Debtor's filing for chapter 11 relief, the District Court Litigation have been placed in the Eastern District of Pennsylvania's civil suspense file.

Both actions are substantially similar and arise from certain conduct alleged to have been

3

undertaken by Eastburn Defendants on behalf of the Debtor in the performance of professional services. Since the placement of the District Court Litigation into the civil suspense file, the Debtor has initiated a lawsuit against the Eastburn Defendants in the Court of Common Pleas, Philadelphia County captioned *Salem Baptist Church of Jenkintown v. Eastburn and Gray, P.C. et al.*, January Term 2011, No. 4515 (the "Malpractice Litigation"). This Court is unaware of the current status of the Malpractice Litigation. Federal has tendered the Policy to the Eastburn Defendants for use as they see fit for purposes of defending themselves in the District Court litigation as well as against the Debtor's Malpractice Litigation.

On February 16, 2011, the Debtor initiated this adversary proceeding by filing the Complaint. Unfortunately for this Court, the Complaint is less than clear as to the relief requested by the Debtor and the basis upon which it alleges it is entitled to such relief. The body of the Complaint identifies two claims for relief: (1) a request for a declaratory judgment as to whether the Federal Policy provides coverage to the Eastburn Defendants in connection with the District Court Litigation ("First Claim for Relief"); and (2) a request for a declaratory judgment as to whether the proceeds of the Federal Policy are Estate Property pursuant to 11 U.S.C. § 541 ("Second Claim for Relief"). However, as acknowledged by the adversary proceeding cover sheet attached to the Complaint[2] as well as the Complaint itself,[3] the Debtor also seeks the following relief: (1) relief pursuant to 11 U.S.C. §§ 542 and 543 for turnover of specific assets, namely the proceeds of the Policy; (2) injunctive relief barring the Eastburn Defendants for expending any of the proceeds of the Policy in connection with their defense of the District Court litigation; and (3) an accounting of all proceeds of the Policy. At the hearing, Debtor's counsel informed this Court that the essence of its Complaint seeks to enjoin the Eastburn Defendants from expending the proceeds of the Federal Policy. With this acknowledgement in mind, this Court finds that the Debtor is

---

[2] In the box labeled "Cause of Action," the Debtor wrote:
"Complaint to Determine rights and obligations under a professional liability insurance policy; *action to determine debtor's property rights pursuant to 11 U.S.C. sec. 542 and 543.*" [emphasis added].
[3] In relevant part, the Complaint reads: "This Court has jurisdiction over this adversary proceeding as it seeks as a remedy the protection of estate assets pursuant to 11 U.S.C. §§ 542 and 543."

4

essentially seeking prejudgment attachment of the proceeds of the Federal Policy.[4]

The Defendants argue in their Motions that (1) this Court lacks jurisdiction to address the Debtor's claims for relief because the matters implicated are not core or related-to proceedings, and (2) the Debtor lacks standing to bring such claims.[5] In the Answer, the Debtor's two principal arguments as to why this Court has jurisdiction to consider the matters raised by its Complaint are: (1) the determination of the scope of the Policy is a core proceeding because the Debtor has an interest in the proceeds of the Policy and therefore the Complaint implicates matters concerning the administration of the Chapter 11 estate; and, in the alternative, (2) the District Court Litigation are a related-to proceedings because the District Court Litigation will cause the dissipation of the proceeds of the Policy.

At the Hearing, counsel for Logan and Delta submitted to this Court for its consideration a recent decision by the Eighth Circuit Court of Appeals that, as counsel argued, stood for the proposition that Article III standing requirements apply to proceedings before federal bankruptcy courts. *In re Farmland Industries, Inc.*, No. 09-3049, 2011 WL 1226121 (8th Cir., Apr. 4, 2011). In response, Debtor's counsel requested an opportunity to file a brief addressing the decision.

Salem Baptist Church filed its reply brief on May 3, 2011. Rather than address the decision, the Debtor argued that *Farmland* is at odds with Third Circuit precedent as set forth by *Binder v. Price Waterhouse & Co. LLP (In re Resorts International)*, 372 F.3d 154, 162 (3d Cir. 2003). On May 10, 2011, Logan and Delta filed their post-hearing brief in which they reiterated their position that jurisdiction of bankruptcy courts is limited by Article III standing requirements. On the same day, Mack filed his post-hearing brief in which he argued that the Debtor's argument constitutes a "red herring" and that, consistent with Third Circuit precedent, the jurisdiction of bankruptcy courts is limited by Article III

---

[4] Despite requesting injunctive relief, the Debtor's Complaint and Answer fail to address matters relating to the elements it must prove in order to be eligible for injunctive relief. For instance, the Debtor fails to make any attempt to meet its burden of demonstrating that the requested injunction is necessary to its reorganization and fair to the parties. *See, e.g., In Gillman v. Continental Airlines (In re Continental Airlines)*, 203 F.3d 203, 214-15 (3d Cir. 2000) (setting forth standard for issuance of a third-party injunction pursuant to a bankruptcy court's authority as provided by 11 U.S.C. § 105(a)). Because the Debtor failed to cite authority in support of its request for injunctive relief, this Court is without grounds to consider granting such relief. *Scully v. U.S. WATS, Inc.*, 238 F.3d 497, 515-16 (3d Cir. 2001) ("a judgment can usually only be based on grounds raised by the parties.").

[5] Pursuant to F.R.C.P. 12(b)(6), the Motions also argue that the Debtor's Complaint fails to state a claim for the reason that the Federal Policy does cover the Eastburn Defendants in the two pending actions. Because this Court finds the issue of jurisdiction dispositive, this Court will not address the portions of the Motions addressing F.R.C.P. 12(b)(6).

standing requirements whenever a bankruptcy court exercises the judicial power of the United States. *State of New Jersey, Dept. of Envtl. Protection v. Heldor Indus., Inc.*, 989 F.2d 702, 707 n. 8 (3d Cir. 1993). Counsel for Logan raised other issues in its post-hearing brief, however, because the arguments were not made to this Court in Logan's prior papers, this Court is without authority to consider them. *See, e.g., O'Connor v. Kelly*, No. 02-2257, 2004 WL 1012853, at *2 n. 5 (E.D.Pa. May 5, 2004). Finally, the Eastburn Defendants filed their post-hearing brief on May 16, 2011. In their brief, the Eastburn Defendants argue that the Debtor's Complaint must be dismissed because the Debtor lacks any interest in the Policy or its proceeds.

Ultimately, this Court agrees with the Eastburn Defendants and finds that the determinative issue is whether the proceeds of Policy issued by Federal to the Eastburn Defendants may be considered property of the Chapter 11 estate within the meaning of 11 U.S.C. § 541. Although the Debtor has framed this adversary proceeding as a request for a declaratory judgment, this Court finds that the relief requested necessarily entails the issuance of a type of injunctive relief. For example, pursuant to the Debtor's First Claim for Relief, the Debtor requests that this Court determine that the District Court Litigation are not "Covered Claims" under the Federal Policy. By asserting that the District Court Litigation are not "Covered Claims," the Debtor is necessarily requesting that this Court enter an order enjoining the Eastburn Defendants from expending any of the Policy proceeds in connection with their defense in the District Court Litigation. To be entitled to injunctive relief governing the disposition of specific property, the Debtor must show that it possesses an interest in the property. As discussed herein, the Debtor has failed to state any legal basis for how its Malpractice Claims against the Eastburn Defendants may be leveraged into a specific interest in the Policy or its proceeds, let alone a basis upon which this Court may enjoin the prosecution of litigation between non-debtor parties.

**This Court's Jurisdiction**

Federal courts are courts of limited jurisdiction that may only hear a case if the Constitution or a federal statute provides the court with jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994). A bankruptcy court has jurisdiction to adjudicate two types of claims: (1) core and

6

(2) related to 28 U.S.C. 157; *In re Radogna*, 331 Fed. Appx. 962, 965 (3d Cir. 2009). A proceeding is core if "it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case." *Torkelsen v. Maggio (In re Guild and Gallery Plus, Inc.)*, 72 F.3d 1171, 1178 (3d Cir.1996)); *Allen v. J.K. Harris & Co., LLC*, 331 B.R. 634, 640-41 (E.D. Pa. 2005) (quoting *Torkelsen*). Although the Debtor styled the Complaint as an action pursuant to 11 U.S.C. §§ 542 and 543 for turnover of specific assets, its claim against the Policy arises from state tort law and not in the context of a bankruptcy. *See, e.g., Beard v. Braunstein*, 914 F.2d 434, 444 (3rd Cir. 1990) (distinguishing between core turnover proceeding and related-to state-law contract actions that have been styled as turnover proceedings). As a result, this proceeding will be within this Court's core jurisdiction only if the Debtor's estate has an interest in the Policy. *See, e.g.,* 28 U.S.C. § 157(b)(2)(a) (establishing "matter concerning the administration of the estate" as being within a bankruptcy court's core jurisdiction).

On the other hand, a related-to proceeding is one where "the outcome of that proceeding could conceivably have any effect on the estate being administrated in bankruptcy." *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984); *In re Federal-Mogul Global, Inc.*, 300 F.3d 368 (3d Cir. 2002) (addressing related-to jurisdiction over actions involving nondebtor parties where the defendant, if found liable, may seek indemnification or contribution from the debtor). As here, the Third Circuit in *Pacor* addressed a bankruptcy court's related-to jurisdiction over tort claims brought by non-debtors against other non-debtors. Although *Pacor* does stand for the proposition that a Bankruptcy Court's related-to jurisdiction does extend to actions that "could conceivably have any effect on the estate being administered in bankruptcy," *Pacor* at 994, the sweep of this test is not as broad as the Debtor argues. As later explained by the Third Circuit in *Federal-Mogul*, "*Pacor* made clear that there is no 'related to' jurisdiction over a personal injury claim against a non-debtor 'without the filing and adjudication of a separate claim for indemnification' against the debtor." *Federal-Mogul Global, Inc.*, 300 F.3d at 375-76 (quoting *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984)); *In re Fineberg*, 170 B.R. 276, 281 (E.D. Pa. 1994)

7

(recognizing § 523(a) nondischargeability proceedings are within a bankruptcy court's core jurisdiction).[6]

Because a separate indemnification proceeding would be necessary for the Eastburn Defendants to receive indemnification or contribution from the Debtor, this Court finds that, pursuant to the specific holding of *Pacor*, this Court lacks related-to jurisdiction over the District Court Litigation. Therefore, for this Court to have jurisdiction over the Complaint, the proceeding must lie within this Court's core jurisdiction. For this reason, the determinative issue is whether the Debtor, as of the Petition Date, possessed any interest in the Policy or its proceeds. *See Gillman v. Continental Airlines (In re Continental Airlines)*, 203 F.3d 203, 217 (3d Cir. 2000) (noting a debtor must have an interest in property that is subject to the third-party proceeding for the issuance of a third-party injunction to be appropriate).

**The Debtor's Interest in the Policy and its Proceeds**

As of the Petition Date, the Debtor held an unmatured tort claim against the Eastburn Defendants. This unmatured tort claim is part of the Debtor's estate. However, it does not follow that the Debtor's unmatured tort claim may be leveraged into an interest in any specific property held by the Eastburn Defendants, let alone the proceeds of the Policy. *See, e.g., In re Allied Digital Technologies, Corp.*, 206 B.R. 505, 512 (Bankr. D. Del. 2004) ("when a suit is brought on behalf of the debtor, the courts generally hold that the debtor is merely an indirect insured and the proceeds are not property of the estate."). As recognized by the Supreme Court, a court is without authority to issue and a party is thereby without a right to request an injunction freezing a defendant's assets where a plaintiff has not asserted cognizable relief in equity. *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308 (1999) (recognizing "the well-established general rule that a judgment establishing the debt was necessary before a court of equity would interfere with the debtor's use of his property."); *De Beers Consol. Mines v. U.S.*,

---

[6] This Court notes that after the U.S. Supreme Court's recent decision in *Stern v. Marshall*, 131 S.Ct. 2594 (2011) such claims may now be excluded from the jurisdiction of bankruptcy courts. Although the precise implications of the Supreme Court's decision in *Stern* on the related-to jurisdiction of bankruptcy courts remain to be determined, the Supreme Court's holding that bankruptcy courts may not decide "a common law cause of action, when the action neither derives from nor depends on any agency regulatory regime," *Id.* at 2598, suggests that, consistent with this Court's decision herein, this Court would lack jurisdiction to hear the Debtor's claims against the Eastburn Defendants. Because the resolution of this issue is not determinative of the outcome of this Court's opinion, this Court will refrain from addressing it.

325 U.S. 212, 222-23 (1945) (recognizing that allegation that a defendant may dissipate assets available to a potential tort creditor is insufficient to justify "sequestrating his opponent's assets pending recovery and satisfaction of a judgment"); *ContiChem LPG v. Parsons Shipping Co., Ltd.* 229 F.3d 426, 430 (2d Cir. 2000) (court is without authority to issue preliminary injunction prohibiting disposition of assets where plaintiff lacks a judgment adjudicating its claim); *In re World Health Alternatives, Inc.*, 369 B.R. 805, 811 (Bankr. D. Del. 2007) (holding that estate's contingent interest in insurance proceeds was not sufficient to enjoin third-party litigation that may affect the availability of insurance proceeds); *In re Seatco, Inc.*, 259 B.R. 279, 285-86 (Bankr. N.D. Tex. 2001) (stating that a bankruptcy court lacks authority to grant prejudgment relief to facilitate collection of unrealized judgments); *Sabratek Corp. v. LaSalle Bank, N.A.*, 257 B.R. 732 (Bankr. D. Del. 2000) ("The injunctive relief which the Committee seeks is in the nature of a prejudgment sequestration or attachment under Federal Rules of Civil Procedure 64 and 65, as incorporated in Federal Rules of Bankruptcy Procedure 7064 and 7065. Such relief is an extraordinary remedy and should be sparingly."). Here, the Debtor has not obtained a judgment against the Eastburn Defendants. As a result, the Debtor is not entitled to injunctive relief barring the Eastburn Defendants from expending the proceeds of the Policy. Pursuant to the reasoning of *Grupo*, this Court lacks the authority to grant the relief sought by the Debtor.

The Debtor has attempted to avoid this conclusion by arguing that the fact that Federal had tendered the Federal Policy to the Eastburn Defendants somehow conferred upon the Debtor rights to the Policy proceeds. However, at the Hearing and in its Answer, counsel for the Debtor cited no authority addressing the significance of the tender. The legal significance of the tender must be evaluated according to Pennsylvania law. "While federal law defines what types of property comprise the estate, state law generally determines what interest, if any, a debtor has in property." *In re O'Dowd*, 233 F.3d 197, 202 (3d Cir. 2000) (determining whether state-court legal malpractice action against debtor's former attorney constitute property of the debtor's estate) *citing Butner v. United States*, 440 U.S. 48, 55 (1979). According to this Court's own research, this Court has determined that, under Pennsylvania law, the tender of the Policy from Federal to the Eastburn Defendants is of no legal significance to the status of the

9

Debtor's alleged interest in the Policy.

Under Pennsylvania law, the holder of an unmatured tort claim possesses no interest in the proceeds of its tortfeasor's insurance policy and is considered a "stranger" to the tortfeasor's insurance contract. *Carrozza v. Greenbaum, M.D., et al.*, 591 Pa. 196, 210 (2007); *Gray v. N'wide Mut. Ins. Co.*, 422 Pa. 500 (1966) (addressing enforceability of assignment by insured to injured of right to insurance proceeds); *see also Maertin v. Armstrong World Industries, Inc.*, 241 F.Supp.2d 434, 454 (D.N.J. 2002) (holding that tort judgment creditor lacked standing to bring claim for bad faith settlement negotiations against tortfeasor's insurer"). Prior to obtaining a lien "by judgment, levy, sequestration, or other legal or equitable process or proceeding," a judgment creditor does not possess an interest in any specific property of a judgment debtor. *In re Washington*, 242 F.3d 1320, 1323 (11th Cir. 2001); *In re Advantage One Mortg. Corp. v. SCP-Capri MG Owner, LLC (In re Advantage One Mortg. Corp.)*, Adv. No. 08-01372, 2008 WL 5170553, at *4 (Bankr. S.D. Fla. Nov. 4, 2008) (noting "a judicial lien only attaches to property after entry of judgment and the recording, filing, or service of additional documents, including the service of the writ of garnishment"). *See Decatur Contracting v. Belin, Belin, & Naddeo*, 898 F.2d 339, 342 (3rd Cir. 1990) (a tort claim only gives rise to an interest in specific property after a judgment lien attaches by a writ of execution served upon the judgment debtor or third party in possession of a judgment debtor's personal property.)

Although not applying Pennsylvania law, the Fourth Circuit has provided an excellent summary of the Debtor's prejudgment interest.

> "[W]here a plaintiff creditor has no lien or equitable interest in the assets of a defendant debtor, the creditor may not interfere with the debtor's use of his property before obtaining judgment. A debt claim leads only to a money judgment and does not in its own right constitute an interest in specific property. Accordingly, a debt claim does not, before reduction to judgment, authorize prejudgment execution against the debtor's assets."

*U.S. ex rel Rahman v. Oncology Associates*, 198 F.3d 489, 496 (4th Cir. 1999). Applicable Pennsylvania law is consistent with the Fourth Circuit's logic. Unless and until the Debtor obtains a judgment confirmed by an appropriate action under state law garnishing the Policy proceeds, the Debtor has alleged

10

no basis upon which this Court may enjoin the Eastburn Defendants' continuing use of the Policy proceeds.

Alternatively, Pennsylvania law provides that a stranger to the policy may claim a pre-judgment interest in its proceeds if it secures from the insured an assignment of the policy's proceeds. *Insurance Adjustment Bureau, Inc. v. Allstate Insurance Co.*, 588 Pa. 470 (2006) (recognizing that under Pennsylvania assignee of insurance proceeds may collect directly from insurer); *Gray v. N'wide Mut. Ins. Co.*, 422 Pa. 500, 507 (1966) (same). In *Gray*, the Pennsylvania Supreme Court addressed the enforceability of an assignment of an insured's right to the proceeds of its insurance policy, an issue that at the time was "novel in Pennsylvania." *Id.* at 506. Unlike the Debtor which has not obtained a judgment against the Eastburn Defendants, the plaintiff in *Gray* had previously obtained a judgment against an insured arising from injuries caused by an automobile accident. After obtaining the judgment, the plaintiff obtained from the tortfeasor (insured) an assignment of the tortfeasor's interest in his insurance policy and sought recovery directly from the tortfeasor's insurer. In response, the tortfeasor's insurance company argued that the tort creditor was not entitled to recover insurance proceeds from the tortfeasor's insurance policy because the tort creditor was "a stranger to the relationship between the insured and the insurer." *Id.* The court acknowledged that, but for the assignment and notwithstanding the fact that it obtained a judgment on its claim against the tortfeasor, the tort creditor would have no right of recovery against the insurer. *Id.* at 507. After determining that an insured may assign its rights to the proceeds of its insurance policy, the court found that a tort creditor "can, as any other assignee, do indirectly *what he could not have done directly*." *Id.* (emphasis added). By virtue of the assignment, the tort creditor was held to hold a direct interest in the proceeds of the tortfeasor's insurance that permitted the tort creditor to sue the insurer directly.

The court's decision in *Gray* is significant because it constituted a substantial departure from prior Pennsylvania practice that prevented tort creditors from recovering directly from a tortfeasor's insurer. As acknowledged by the court:

"We believe the conclusion we reach will stream-line the former needlessly complicated

11

> an unjust procedure. Instead of the claimant having to wait for the insured to undergo the time and expense of suing the insurer and then be paid by the insured, *if the insured will assign his right of action, claimant then can sue the insurer directly.* Instead of fostering the insured's fear that the claimant may force him into bankruptcy before the insured can collect the excess judgment from his insurer, we now give the insured a remedy by way of assignment."

*Id.* at 511 n.7 (1966) (emphasis added).

As *Gray* makes clear, under Pennsylvania law, a tort creditor has a right to the proceeds of a tortfeasor's insurance *only if* the tort creditor has received an assignment of the tortfeasor's interest. Because the Debtor has not alleged that Federal, by way of the tender of the Policy to the Eastburn Defendants, assigned the proceeds of the Policy to the Debtor, the Debtor has no basis to claim an interest. Lacking an assignment, it is clear that under Pennsylvania law the Debtor has no interest in the Federal Policy or its proceeds. At most, the Debtor's Malpractice Claims constitute a contingent claim against the all of the Eastburn Defendants' assets. The Debtor's claim may not be leveraged into an interest in any specific property, including the Policy or its proceeds.

In the bankruptcy context, courts have reached consistent results. *See, e.g., In re Laminate Kingdom, LLC*, Bky. No. 07–10279, 2008 WL 2008 WL 1766637, at *3 (Bankr. S.D. Fla. Mar. 13, 2008) (holding that proceeds of insurance policy issued to tortfeasor are "not considered to be property of the estate subject to a stay."); *Maertin v. Armstrong World Industries, Inc.*, 241 F.Supp.2d 434, 447 (D.N.J. 2002). For example, in *Maertin*, the District of New Jersey addressed the claim of a debtor's tort creditors to the proceeds of a debtor's insurance policies. Although not applying Pennsylvania law, the law applied was consistent with the rule announced in *Gray*. Prior to filing for bankruptcy, the debtor had entered into a settlement agreement with the tort creditors. The tort creditors argued that "the act of entering the settlement agreement should have implicitly assigned them rights to [the debtor's] insurance proceeds." *Id.* The court rejected this argument pursuant to the following logic:

> "Before filing for bankruptcy, [the debtor] did agree to pay plaintiffs, and may have even intended to use the insurance proceeds to do so, but because it did not affirmatively and explicitly assign its rights in the policies to plaintiffs, this Court must follow the general rule and find that the debtor's liability insurance policies and their proceeds are property of [the debtor's] estate."

12

*Id.* at 447.

Comparing the relation of the parties in this case to the parties in *Maertin*, the Eastburn Defendants stand in the position of the debtor is *Maertin* and the Debtor stands in the position of the tort creditors. Unlike the *Maertin* tort creditors, the Debtor is not even the beneficiary of a settlement agreement. As a result, the Debtor cannot even argue that the Eastburn Defendants have implicitly assigned to it their rights to the proceeds of the Federal Policy. Pursuant to the logic employed by *Maertin* that is consistent with the rule announced by *Gray*, the Debtor is without a basis to establish that it possesses any legal or equitable interest in the proceeds of the Policy. The Eastburn Defendants necessarily retain ownership and control of the proceeds of the Policy.

Finally, the inchoate status of a tort creditor's rights is unaffected by the filing for bankruptcy. This Court has no authority to grant a tort creditor special rights or priority over other competing claimants to specific assets of a potential judgment debtor. *In re Reliance Acceptance Group, Inc.*, 235 B.R. 548, 561-62 (D. Del. 1999) (noting lack of any authority that grants a debtor's estate superior rights in insurance proceeds to any other non-debtor tort-creditor); *In re Phar–Mor Inc. Securities Litigation*, 164 B.R. 903 (W.D. Pa. 1994) *In re Laminate Kingdom, LLC*, Bky. No. 07–10279, 2008 WL 1766637, at *3 (Bankr. S.D. Fla. Mar. 13, 2008) (finding cause existed to grant relief from stay to permit insurer to advance defense costs to insured despite debtor's contingent interest in insurance proceeds); *The Underwriters at Lloyd's, London v. Chancellor Corp., et al (In re Adley)*, 333 B.R. 587, 613 (Bankr. D. Mass. 2005) (holding that the court lacked jurisdiction to enjoin the resolution of competing claims to insurance policy proceeds). Absent enforcement of a judgment via a judicial lien, the Debtor lacks a legal basis to claim any interest in the Policy or its proceeds. As a result, this Court is without authority to confer upon the Debtor priority over other non-debtor parties, including Logan or Mack, who have similar claims to property owned by the Eastburn Defendants.

The only two cases cited by the Debtor in support of its alleged interest in the Policy or its proceeds are *Houston v. Edgeworth (In re Edgeworth)*, 993 F.2d 51 (5th Cir. 1993) and *In re Louisiana World Exposition, Inc.*, 832 F.2d 1391 (5th Cir. 1987). In *Edgeworth*, the Fifth Circuit addressed whether

13

the discharge granted to a debtor precluded later actions by his former patients asserting malpractice claims that would be compensated from the debtor's insurance coverage. Recognizing that a "discharge in bankruptcy does not extinguish the debt itself, but merely releases the debtor from personal liability for the debt," *Houston v. Edgeworth (In re Edgeworth)*, 993 F.2d at 53, the Court held that the debtor's discharge did not "bar a suit against the discharged debtor as the nominal defendant." *Id.* at 54. Contrary to the Debtor's arguments, the decision did not find that the tort creditors held an interest in the proceeds of the interest policy. Rather, the court acknowledged that the policy proceeds were *not* part of the debtor's estate because the debtor was not an intended beneficiary of the policy. Contrary to the Debtor's apparent reading of *Edgeworth*, a finding that the owner of an insurance policy does not own the policy's proceeds may not be equated to a finding that tort plaintiffs hold any interest in the policy's proceeds. In fact, the Fifth Circuit itself recognized the tort plaintiffs' interest in the policy is contingent upon the plaintiff first obtaining a judgment. *Id.* at 53-54 ("In the liability insurance context, of course, a tort plaintiff must first establish the liability of the debtor before the insurer becomes contractually obligated to make any payment."). Lacking a judgment enforcing its Malpractice Claims, this Court finds the *Edgeworth* decision to be not only inapplicable to the Debtor's present circumstances but also indicative of the fact that the Debtor does not possess any interest in the Policy proceeds.

The Debtor's reference to *Louisiana World* further undermines its cause. In *Louisiana World*, a case relied upon by the *Edgeworth* decision, a creditors' committee acting in the name of the debtor corporation sought an injunction to stop the disbursement of director and officer liability policies to the debtor corporation's directors and officers. As explained by the court, "the sole and narrow question here, which is whether the *liability proceeds* are part of [the debtor's] estate in bankruptcy." *Louisiana World, Inc.*, 832 F.2d at 1399. The Fifth Circuit found that the proceeds were not part of the debtor's estate because "the obligation of the insurance companies was only to the directors and officers and *they are the named and the only insureds*." The fact that the insurance policy in *Louisiana World* named the directors and officers as beneficiaries renders the Debtor's reliance on this decision misplaced. Unlike the directors and officers in *Louisiana World*, the Debtor is not *a named beneficiary* of the Federal Policy.

14

Moreover, a close reading of *Louisiana World* reveals the following quote: "One having a pending, unadjudicated tort claim against another does not-whether or not the claimant is bankrupt-thereby have a property interest in liability insurance proceeds payable to the defendant." *In re Louisiana World Exposition, Inc.*, 832 F.2d 1391, 1399 (5th Cir. 1987). Pursuant to this statement, not only is the Debtor's reliance on *Louisiana World* misplaced, it is clear that the Debtor lacks any interest in the Policy or its Proceeds. Without an interest in the Policy, the Debtor cannot meet its burden for issuance of a third-party injunction.

**Conclusion**

For the reasons set forth above, this Court finds that the Debtor lacks any interest in the Policy or its Proceeds and as a result this Court lacks subject matter jurisdiction to adjudicate the matters raised by the Complaint.

An Order consistent with this Memorandum Opinion will be entered.

Dated: August 25, 2011

_____
MAGDELINE D. COLEMAN
UNITED STATES BANKRUPTCY JUDGE